THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ANDREA BILLUPS-DRYER, | ) |
| *Plaintiff*, | ) |
| | ) No. 20 C 1597 |
| v. | ) |
| | ) Judge Virginia M. Kendall |
| CITY OF DOLTON and DOLTON POLICE OFFICER PHIL SHEEHAN (Star #128), | ) |
| *Defendant*s. | ) |

**MEMORANDUM OPINION & ORDER**

On January 20, 2022, Plaintiff Andrea Billups-Dryer filed a Second Amended Complaint ("SAC") against Defendants the City of Dolton, Illinois ("Dolton") and former Dolton Police Officer Phil Sheehan (together, "Defendants"). (Dkt. 60). Plaintiff now brings claims under 42 U.S.C. § 1983 excessive force and false arrest/unlawful detention, as well as state law claims for malicious prosecution, false imprisonment, assault, battery, willful and wanton hiring, respondeat superior, and indemnification. (*Id.*). Plaintiff also brings a *Monell* claim against Dolton. (*Id.*). Now before the Court is Defendants' Motion to Dismiss the SAC, and Motion to Strike certain portions therefrom. (Dkt. 61).[1] For the following reasons, Defendants' motion [61] is granted in part and denied in part.

**BACKGROUND**

On a motion to dismiss under Rule 12(b)(6), the Court accepts the complaint's well-pleaded factual allegations, with all reasonable inferences drawn in the non-moving party's favor, but not its legal conclusions. *See Smoke Shop, LLC v. United States*, 761 F.3d 779, 785 (7th Cir.

---

[1] On February 5, 2022, the Court granted Defendant Sheehan's motion to join Village of Dolton's Motion to Strike and Dismiss. (*See* Dkt. 62).

1

2014). The following factual allegations are taken from Plaintiff's SAC, (Dkt. 60) and are assumed true for purposes of this motion. *W. Bend Mut. Ins. Co. v. Schumacher*, 844 F.3d 670, 675 (7th Cir. 2016).

On March 10, 2018, Plaintiff was cleaning outside of a home located at 14921 Irving Avenue in Dolton, Illinois, when she was approached by Defendant Sheehan. (Dkt. 60 ¶ 7). At the time, Sheehan was employed by the Dolton Police Department as a police officer. (*Id.* ¶¶ 5–6). In an aggressive tone, Sheehan asked Plaintiff what she was doing at that location and demanded Plaintiff to show him a form of identification. (*Id.* ¶ 8). Plaintiff refused Sheehan's order, prompting Sheehan to warn Plaintiff that he was going to place her under arrest. (*Id.* ¶ 9). At that time, Plaintiff attempted to videotape their encounter on her cell phone. (*Id.*). In response, Sheehan cuffed one of Plaintiff's hands tightly behind her back and knocked the phone out of her hand. (*Id.* ¶ 10). When Plaintiff attempted to retrieve her phone, Sheehan pushed her against the house, wrestled her to the ground, and placed her in a chokehold. (*Id.* ¶ 11 (adding that Sheehan yelled at Plaintiff, demanding her name)). Sheehan also placed the weight of his body on Plaintiff's head and neck which prevented her from speaking and breathing. (*Id.* ¶ 12). Next, Sheehan stomped on Plaintiff's right leg, causing it to bruise, and ultimately dragged her to his vehicle for transport to the police station. (*Id.* ¶ 13 (further alleging that Plaintiff was subsequently processed on false charges)).

Plaintiff sustained several injuries from this encounter. Upon her release from the police station, Plaintiff had chest paints, a bloody nose and tongue, swelling on her neck and face, and bruises on her body. (*Id.* ¶ 14). Plaintiff sought medical attention at a hospital, where she was triaged and ultimately admitted for suffering a heart attack. (*Id.*).

On January 21, 2020, criminal charges brought against Plaintiff concerning the foregoing events were dismissed. (*Id.* ¶ 15). Plaintiff has since learned that Sheehan has a history of using excessive force and violating individuals' constitutional rights, and that Sheehan was terminated by two police departments prior to working for Dolton. (*Id.* ¶¶ 16–17). Plaintiff alleges that Dolton was aware of Sheehan's prior misconduct at the time of his hiring – and that Dolton therefore should have known that Sheehan was unfit for employment as a police officer. (*Id.* ¶¶ 18–19).

## LEGAL STANDARD

"To survive a motion to dismiss under 12(b)(6), a complaint must 'state a claim to relief that is plausible on its face.' " *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Adams*, 742 F.3d at 728 (quoting *Ashcroft v. Iqbal*, 566 U.S. 662, 678 (2009)). "[I]t is not enough for a complaint to *avoid foreclosing* possible bases for relief; it must actually *suggest* that the plaintiff has a right to relief . . . by providing allegations that 'raise a right to relief above the speculative level.' " *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 777 (7th Cir. 2007) (citing *Twombly*, 550 U.S. at 555) (emphasis in original). The Court construes the complaint "in the light most favorable to the nonmoving party, accept[s] well-pleaded facts as true, and draw[s] all inferences in [his] favor." *Reynolds v. CB Sports Bar, Inc.*, 623 F.3d 1143, 1146 (7th Cir. 2010). "[L]egal conclusions and conclusory allegations merely reciting the elements of the claim are not entitled to this presumption of truth." *McCauley v. City of Chi.*, 671 F.3d 611, 616 (7th Cir. 2011) (citing *Iqbal*, 566 U.S. at 678).

**DISCUSSION**

A. **Count VII Hiring Claim**

    1. **Motion to Strike**

Federal Rule of Civil Procedure 12(f) allows the Court to strike "redundant, immaterial, impertinent, or scandalous matter" from a Complaint, but motions to strike are generally disfavored. *See Heller Fin., Inc. v. Midwhey Powder Co., Inc.*, 883 F.2d 1286, 1294 (7th Cir. 1989). Defendants seek to strike Count VII and related allegations in paragraphs 16–19 of the SAC. (*E.g.*, Dkt. 61 at 4). Defendants argue that Plaintiff narrowly requested, and the Court granted, leave to file an SAC which included a negligent hiring claim – yet ultimately filed an SAC containing a willful and wanton hiring claim. (*Id.* at 4–5; *compare* Dkt. 57-1 ¶¶ 45–51 (Proposed SAC asserting state law claim for Negligent Hiring, Retention, and Supervision), *with* Dkt. 60 ¶¶ 49–59 (filed SAC alleging willful and wanton hiring practices)). In other words, Defendants argue that the addition of Count VII was improper because the Court did not provide leave to add that claim as pleaded.

However, the Court did not so narrowly limit its grant of Plaintiff's request. At the January 13, 2022 motion hearing, Plaintiff's counsel explained that new facts were unearthed through discovery concerning the circumstances of Defendant Sheehan's employment history, which, counsel opined, could support a state law negligent hiring claim. (Dkt. 65 at 6:17–24, 7:6–8:4). In granting Plaintiff's motion, the Court explained as follows:

> [S]omething that comes out of discovery is generally permitted to be charged and so I'm going to allow her to amend her complaint and I will allow you, of course, to attack that amendment in a briefing. So the second amended complaint shall be filed one week from today."

(Dkt. 65 at 11:17–22). The Court thus afforded Plaintiff an opportunity to amend her complaint in accordance with the relevant evidence obtained through discovery and provided her one week

4

to finalize her filing. In addition, the Court's order broadly "grant[ed] Plaintiff's Motion for leave to file [SAC]." (Dkt. 59). By contrast, in granting Plaintiff leave to file an amended complaint, the Court did not require Plaintiff to file her Proposed SAC specifically. (Dkt. 57-1). In any case, Plaintiff's hiring claim as now pleaded is not so far afield from the scope of her proposal as to warrant the extraordinary and disfavored relief of striking the allegations. *E.g.*, *Noordhof v. Howmedica Osteonics Corp.*, No. 18-cv-5950, 2019 WL 10301741, at *4 (N.D. Ill. Apr. 8, 2019); *contra Urioste v. Corizon & Centurion Health Care Providers*, No. 1:16-cv-00755-JCH-KRS, 2021 WL 1811694, at *6 (D.N.M. May 6, 2021) (striking allegations that were "not pleaded or even suggested in previous complaints," where action pertained to "denial of medical attention" and plaintiff attempted to newly assert a claim of double jeopardy); *U.F.C.W. Loc. 56 Health & Welfare Fund v. J.D.'s Mkt.*, 240 F.R.D. 149, 153–54 (D.N.J. 2007) (striking additions that went "far beyond the limited scope of amendment granted by [the] [j]udge," where plaintiffs added four new counts and a new defendant after stating "that they had no intention of doing so").

Given these circumstances, the fact that Plaintiff fine-tuned the nature of her hiring claim does not warrant striking it under Rule 12(f). Defendants' Motion to Strike is denied.

**2. Motion to Dismiss**

Defendants next argue that Count VII fails because it is barred by the statute of limitations. (Dkt. 61 at 6–8). Defendants argue in the alternative that the Illinois Tort Immunity Act (the "Act"), Section 2-201, shields Dolton from liability on this count because the decision to hire police officers is discretionary. (*Id.* at 8–9). Plaintiff counters that her hiring claim relates back to her initial complaint and that equitable tolling warrants denial of Defendants' timeliness argument. (Dkt. 64 at 5–9). Plaintiff further maintain that Dolton is not covered by discretionary immunity codified by Section 2-201. (*Id.* at 9–11).

5

    Section 2-201 of the Act states, in its entirety:

> "Except as otherwise provided by Statute, a public employee serving in a position involving the determination of policy or the exercise of discretion is not liable for an injury resulting from his act or omission in determining policy when acting in the exercise of such discretion even though abused."

745 ILCS 10/2-201. In addition, Section 2-109 of the Act provides that a "local public entity is not liable for an injury resulting from an act or omission of its employee where the employee is not liable." 745 ILCS 10/2-109. "Read together, [Sections 2-109 and 2-201] immunize a public entity from liability for the discretionary acts or omissions of its employees." *E.g.*, *Hill v. Cook Cnty.*, 463 F. Supp. 3d 820, 847 (N.D. Ill. May 31, 2020) (quoting *Monson v. City of Danville*, 115 N.E.3d 81, 88 (Ill. 2018); citing *Andrews*, 160 N.E.3d at 902 ("These sections immunize a local governmental entity from liability for injuries arising out of its employee's acts or omissions while determining policy and exercising discretion.")). For immunity to apply under the Act, the City's actions must be "both a determination of policy and an exercise of discretion." *Van Meter v. Darien Park Dist.*, 207 Ill.2d 359, 365 (2003). In addition, Section 2-201 "provides absolute immunity for both negligence and willful and wanton conduct." *Andrews v. Metro. Water Reclamation Dist. of Greater Chi.*, 160 N.E.3d 895, 905 (Ill. 2019); *Jane Doe–3 v. McClean Cnty. Unit Dist. No. 5 Bd. of Dirs.*, 973 N.E.2d 880, 893 (Ill. 2012).

    Under this standard, Courts have consistently held that public entities such as Dolton are immune from hiring claims under Section 2-201. *See Doe v. Vill. of Arlington Heights*, 782 F.3d 911, 922 (7th Cir. 2015) (upholding dismissal of negligent hiring claim; "the Illinois state courts have determined that '[t]he decision to hire or not to hire a police officer is an inherently discretionary act and, thus, is subject to the immunities contained in the [Act]'") (quoting *Johnson v. Mers*, 279 Ill. App. 3d 372 (2d Dist. 1996)); *Hill*, 463 F. Supp. 3d at 847 (dismissing hiring claims asserted against municipal defendants, applying Section 2-201); *Glickman v. Main-Niles*

6

*Ass'n of Spec. Recreation*, 440 F. Supp. 3d 946, 954–55 (N.D. Ill. Feb. 24, 2020) (same); *Doe 20 v. Bd. of Educ. of Cmty. Unit Sch. Dist. No. 5*, 680 F. Supp. 2d 957, 989–90 (C.D. Ill. 2010) (same).

In keeping with the foregoing precedent, Dolton's discretionary immunity precludes Plaintiff's hiring claim. Therefore, Count VII is dismissed with prejudice. Because the Court finds that Section 2-201 applies here, it need not presently address the statute of limitations issue.

**B.  Count VIII *Monell* Claim**

In Count VIII of the SAC, Plaintiff alleges a *Monell* claim against Dolton. (*See* Dkt. 60 ¶¶ 60–70). Defendants argue that Plaintiff has failed to state a *Monell* claim under Rule 12(b)(6). (Dkt. 61 at 10–14). In particular, they assert that Plaintiff's SAC lacks well-pled allegations of a widespread unconstitutional practice, that Plaintiff fails to allege "deliberate indifference" by municipal policymakers, and that the SAC fails to meet *Monell*'s causation requirements. (*Id.*).

To state a claim under *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 694–95 (1978), the plaintiff must plead factual content that would allow the Court to draw a reasonable inference that a plaintiff must show: "(1) a municipal action, which can be an express policy, a widespread custom, or an act by an individual with policy-making authority; (2) culpability, meaning, at a minimum, deliberate conduct; and (3) causation, which means the municipal action was the 'moving force' behind the constitutional injury." *Ruiz-Cortez v. City of Chi.*, 931 F.3d 592, 598 (7th Cir. 2019); *see also Bridges v. Dart*, 950 F.3d 476, 479 (7th Cir. 2020) ("In order to hold a government entity such as a municipality or county liable under section 1983, the plaintiff must demonstrate that the government entity [ ] itself caused the constitutional violation at issue."); *Thomas v. Cook Cnty. Sheriff's Dep't*, 604 F.3d 293, 303 (7th Cir. 2010).

Under the first *Monell* requirement, "[a] local governing body may be liable for monetary damages under § 1983 if the unconstitutional act complained of is caused by: (1) an official policy

adopted and promulgated by its officers; (2) a governmental practice or custom that, although not officially authorized, is widespread and well settled; or (3) an official with final policy-making authority." *Thomas v. Cook Cnty. Sheriff's Dep't*, 604 F.3d 293, 303 (7th Cir. 2010); *see also Valentino v. Vill. of S. Chi. Heights*, 575 F.3d 664, 674 (7th Cir. 2009). "To demonstrate that the [City] is liable for a harmful custom or practice, the plaintiff must show that [City] policymakers were 'deliberately indifferent as to [the] known or obvious consequences [flowing therefrom].' " *Thomas*, 604 F.3d at 303 (quoting *Gable v. City of Chi.*, 296 F.3d 531, 537 (7th Cir. 2002)). "In other words, they must have been aware of the risk created by the custom or practice and must have failed to take appropriate steps to protect the plaintiff." *Id.* Additionally, "legal conclusions or elements of the cause of action . . . may be disregarded on a motion to dismiss." *McCauley*, 671 F.3d at 617. For instance, claims that fail to allege facts showing that the defendant adopted an official policy or custom are not sufficient to survive a 12(b)(6) dismissal. *Id.* at 618.

Plaintiff pursues two distinct theories of liability under *Monell*, which the Court will address in turn. First, she alleges that Dolton had a policy or practice under which officers made false arrests to meet an arrest quota. (Dkt. 64 at 12 (citing Dkt. 60 ¶ 61)). Defendants opine that the SAC is deficiently pleaded in that contains merely "boilerplate allegations devoid of specific instances of misconduct." (Dkt. 61 at 11 (citing *Alcorn v. City of Chi.*, No. 17-cv-5859, 2018 WL 3614010, at *18 (N.D. Ill. July 27, 2018)). Defendants conclude that absent allegations of "more than one instance of misconduct," Plaintiff cannot plausibly allege a "widespread practice" of false arrests stemming from a supposed arrest quota. (Dkt. 61 at 11 (adding that Plaintiff also cannot establish the deliberate indifference or causation elements, for the same reason); Dkt. 66 at 9).

Plaintiff completely fails to counter Defendants' arguments on this point – asserting instead that they "[we]re forfeited, as they were not previously raised in response to the initial Complaint."

8

(Dkt. 64 at 13). However, the Federal Rules do not "prohibit a new Rule 12(b)(6) argument from being raised in a successive motion" to dismiss an amended complaint. *Ennenga v. Starns*, 677 F.3d 766, 773 (7th Cir. 2012); *see also, e.g.*, *Chasensky v. Walker*, 740 F.3d 1088, 1094 (7th Cir. 2014) (explaining same); *Roldan v. Town of Cicero*, No. 17-cv-3707, 2021 WL 3674615, at *5 (N.D. Ill. Aug. 19, 2021) (same); *Blumberg v. Barnett*, No. 15-cv-7873, 2018 WL 10676934, at *2–3 (N.D. Ill. Mar. 13, 2018) (same). Indeed, "when a plaintiff files an amended complaint, the new complaint supersedes all previous complaints" and "opens the door for defendants to raise new and previously unmentioned affirmative defenses." *Massey v. Helman*, 196 F.3d 727, 735 (7th Cir. 1999). As such, Defendants' arguments were properly raised in the present Motion to Dismiss. By choosing not to squarely address them, Plaintiff waived any opposition she might have raised. *See Lee v. Ne. Ill. Reg'l Commuter R.R.*, 912 F.3d 1049, 1053–54 (7th Cir. 2019) ("[Waiver] applies when a party fails to develop arguments related to a discrete issue or when a litigant effectively abandons the litigation by not responding to alleged deficiencies in a motion to dismiss."); *Firestone Financial Corp. v. Meyer*, 796 F.3d 822, 825 ("[A] party generally forfeits an argument or issue not raised in response to a motion to dismiss."); *see also, e.g.*, *Stoller v. Wilmington Tr., Nat'l Ass'n*, No. 18-cv-7169, 2019 WL 6117583, at *3 (N.D. Ill. Nov. 18, 2019) (explaining same). Thus, the Court dismisses this prong of Plaintiff's *Monell* claim.

Next, Plaintiff claims that Dolton ultimately caused the underlying violations through (a) its "failure to maintain adequate policies relating to the hiring, screening, and pre-employment background investigation of employees," (Dkt. 64 at 12 (citing Dkt. 60 ¶¶ 65–66)), and/or (b) the decision of one of its policy-making officials to hire Sheehan, (Dkt. 64 at 12–13 (citing Dkt. 60 ¶¶ 64–70)). However, Plaintiff clarifies her position that this claim "does not require her to show a widespread practice or formal written policy by [Dolton] of hiring abusers like Sheehan" – and

9

that she intends to establish Dolton's liability based on an undisclosed final policymaker's decision to hire Sheehan. (Dkt. 64 at 13).

A municipality can be liable for the deliberate conduct of officials whose acts can fairly be said to be those of the municipality. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986). However, liability attaches "only where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered." *Id.* To determine whether an official is a final policymaker, the court must inquire into: "(1) whether the official is constrained by policies of other officials or legislative bodies; (2) whether the official's decision on the issue in question is subject to meaningful review; and (3) whether the policy decision purportedly made by the official is within the realm of the official's grant of authority." *Vodak v. City of Chi.*, 639 F.3d 738, 748 (7th Cir. 2011) (cleaned up).

Courts routinely require more of plaintiffs than conclusory allegations that a hypothetical decision-maker caused them harm. A degree of particularity is required, even at this stage of the litigation, to withstand a motion to dismiss. *See, e.g.*, *Connelly v. Cook Cnty. Assessor's Off.*, No. 19-cv-07894, --- F. Supp. 3d ----, 2022 WL 294764, at *4 (N.D. Ill. Feb. 1, 2022) ("[A]lthough the First Amended Complaint concludes that [individual defendant] 'was the final policymaker for the [municipal defendant"] . . . it alleges no facts to support this claim. . . . [Plaintiff fails] to allege that [individual defendant] possessed or was delegated final policymaking authority . . . . [as] necessary to permit [such an] inference."); *Marsden v. Kishwaukee Cmty. Coll.*, No. 3:19-cv-50334, --- F. Supp. 3d ----, 2021 WL 5356761, at *8 (N.D. Ill. Nov. 17, 2021) (granting motion to dismiss, explaining that "[a] mere allusion of delegation made in a response brief, which was all that was done here, is not enough to plausibly allege a *Monell* claim against a municipal entity"); *Klingler v. City of Chi.*, No. 15-cv-1609, 2017 WL 3394722, at *1 (N.D. Ill. Aug. 8, 2017)

10

(granting motion to dismiss where plaintiff failed to adequately allege that individual defendant "was an official with final policymaking authority" nor that policymaking authority was delegated to said individual); *Bless v. Cook Cnty. Sheriff's Off.*, No. 13-cv-4271, 2015 WL 890370, at *6 (N.D. Ill. Feb. 27, 2015) (dismissing *Monell* claim given plaintiff's failure to adequately identify an official with final policymaking authority); *LaChance v. City of Chi.*, No. 01-cv-7732, 2002 WL 31375503, at *3 (N.D. Ill. Oct. 22, 2002) ("[Plaintiff] lists no other final policymaker who ratified the [alleged misconduct]. Instead, [he] merely states that 'the City' ratified the action. This allegation, however, is insufficient . . . . It does not give the City notice as to which final policymaker approved the action. . . . [Plaintiff] must point to someone with final policymaking responsibilities who ratified the actions."); *contra Consolino v. Dart*, No. 17-cv-9011, 2019 WL 4450498, at *8 (N.D. Ill. Sept. 17, 2019) (finding plaintiff adequately alleged that named defendant was a final policymaker).

In keeping with the foregoing precedents, the Court finds that Plaintiff's allegations concerning Sheehan's hiring are insufficient to state a *Monell* claim against Dolton. Plaintiff has not referred to Court to any individual with final policymaking authority who might be responsible for the decision-making pertaining to Plaintiff's hiring, and the SAC "provides no allegations or even a reasonable inference as to who delegated what authority to whom and under what circumstances." *E.g.*, *Marsden*, 2021 WL 5356761, at *8. Plaintiff's allegations concerning the decisions of Dolton's final policymakers therefore amount to no more than "[m]ere legal conclusions and conclusory allegations simply reciting the elements of the claim," which are "not entitled to the presumption of truth and must be rejected." *Baskins v. Gilmore*, No. 17-cv-7566, 2018 WL 4699847, at *9 (N.D. Ill. Sept. 30, 2018) (citing *McCauley*, 671 F.3d at 616).

11

Ultimately, the SAC does not support a *Monell* claim against Dolton. Count VIII is accordingly dismissed without prejudice. The Court grants Plaintiff leave to amend her complaint to include sufficient factual allegations to proceed with a *Monell* claim.

## C. Motion to Strike Punitive Damages and Attorneys' Fees

### 1. Punitive Damages

Defendants move to strike Plaintiff's request for punitive damages from Counts III, IV, and V – each of which allege violations of state law – citing the general rule that local entities are immune from such awards in civil actions. (Dkt. 61 at 14). Section 2-102 of the Act provides as follows:

> Notwithstanding any other provision of law, a local public entity is not liable to pay punitive or exemplary damages in any action brought directly or indirectly against it by the injured party or a third party. In addition, no public official is liable to pay punitive or exemplary damages in any action arising out of an act or omission made by the public official while serving in an official executive, legislative, quasi-legislative or quasi-judicial capacity, brought directly or indirectly against him by the injured party or a third party.

745 ILCS 10/2-102 (emphasis added). Dolton and Sheen cannot be held liable for punitive damages under the plain meaning of Section 2-102 as a local public entity and (former) public official being sued in his official capacity. The Court therefore grants Defendants' motion to strike Plaintiff's claim for punitive damages against them in Counts III–V. *See also, e.g.*, *McGruder v. City of Galesburg*, No. 4:20-cv-04102-SLD-JEH, 2021 WL 415044, at *2 (C.D. Ill. Feb. 5, 2021); *Michalek v. Vill. of Sugar Grove*, No. 20-cv-3434, 2020 WL 11626072, at *2 (N.D. Ill. Dec. 14, 2020); *Shachter v. City of Chi.*, No. 18-cv-5504, 2020 WL 3058086, at *6 (N.D. Ill. June 9, 2020).

### 2. Attorneys' Fees

Defendants further request the Court to strike Plaintiff's prayer for attorneys' fees in her state law claims, Counts III, IV, and X. (Dkt. 61 at 14–15). Defendants argue that Plaintiff is not

entitled to an attorneys' fees award because she "cites no statutory provision that would enable her to seek attorney fees for her state law claims." (*Id.* at 15). This is incorrect. Plaintiff's state law claim for indemnification, Count X, cites 745 ILCS 10/9-102, which sets forth:

> A local public entity is empowered and directed to pay any tort judgment or settlement for compensatory damages (and may pay any associated attorney's fees and costs) for which it or an employee while acting within the scope of his employment is liable in the manner provided in this Article.

(*See* Dkt. 60 ¶ 77). Plaintiff's allegations against Sheehan state that he violated her rights while acting within the scope of his employment. (*E.g.*, *id.* ¶¶ 5–6, 23). Dolton may, therefore, be liable for attorneys' fees should Plaintiff prevail on her claims. Accordingly, it would be improper to strike this requested relief from the SAC; Defendants' motion is premature, at best, particularly absent any reason to deem the Plaintiff's fee request as "punitive." *See, e.g.*, *Thompson v. Vill. of Monee*, No. 12-cv-5020, 2013 WL 3337801, at *26–27 (N.D. Ill. July 1, 2013) (explaining municipal defendant's potential liability under Section 9-102); *cf. Winston v. O'Brien*, 773 F.3d 809, 814 (7th Cir. 2014) ("[T]he statute [Section 9-102] has been amended to clarify that municipalities 'may' indemnify fees when they so choose."). Defendants' motion to strike is denied as to Plaintiff's claim for attorneys' fees.

## **CONCLUSION**

For the foregoing reasons, Defendants' Motion [61] is granted in part and denied in part. Specifically, the Court (1) denies the motion to strike paragraphs 16–19 and Count VII from the SAC; (2) grants the motion to dismiss Count VII with prejudice; (3) grants the motion to dismiss Count VIII without prejudice; (4) grants the motion to strike Plaintiff's requests for punitive

damages in Counts III–V; and (5) denies the motion to strike Plaintiff's requests for attorneys' fees in Counts III, IV, and X.

_____
Virginia M. Kendall
United States District Judge

Date: May 26, 2022