IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| Andrea Billups-Dryer,<br><br>          Plaintiff,<br><br>v.<br><br>Village of Dolton, Illinois, and Dolton Police Officer Phil Sheehan.<br><br>          Defendants. | No. 20 CV 1597<br><br>Honorable Nancy L. Maldonado |

## **MEMORANDUM OPINION AND ORDER**

In her Third Amended Complaint ("TAC"), Plaintiff Andrea Billups-Dryer brings claims against Defendants Village of Dolton ("Village") and Dolton Police Officer Phil Sheehan. (Dkt. 72.)[1] The Village has filed a partial motion to dismiss Billups-Dryer's TAC for failure to state a claim. (Dkt. 73.) Officer Sheehan has also filed a motion to strike Billups-Dryer's request for punitive damages in her TAC. (Dkt. 74.) For the following reasons, the Village's motion to dismiss is denied and Officer Sheehan's motion to strike is denied.

## **Background**

Billups-Dryer brings Illinois state law claims against the Village and Officer Sheehan for malicious prosecution, false imprisonment, assault, and battery. (Dkt. 72.) She also brings a federal civil rights claim under *Monell v. Dep't of Social Servs.*, 436 U.S. 658 (1978), and a claim for respondeat superior liability against the Village, and claims under 42 U.S.C. § 1983 for excessive

---

[1] Referenced page numbers are taken from the CM/ECF header.

1

force and unlawful arrest/prosecution against Officer Sheehan in his individual capacity. (*Id.*)

To support her claims, Billups-Dryer alleges the following facts in her TAC, which the Court accepts as true for the purposes of considering the instant motion to dismiss and motion to strike. *See Kubiak v. City of Chicago*, 810 F.3d 476, 480–81 (7th Cir. 2016). Billups-Dryer was cleaning up trash outside a home in Dolton, Illinois on March 10, 2018, when Officer Sheehan approached her. (Dkt. 72 ¶ 7.) Officer Sheehan asked what Billups-Dryer was doing and for her identification, which Billups-Dryer declined to provide. (*Id.* ¶¶ 8–9.) Officer Sheehan then told Billups-Dryer that she would be placed under arrest, even though she had not committed a crime. (*Id.* ¶ 9.) Billups-Dryer attempted to videotape the encounter for her protection, but Officer Sheehan "yanked [Billups-Dryer's] hand behind her and cuffed it very tight," and "knocked [her] cell phone" out of her hand. (*Id.* ¶¶ 9–10.) When Billups-Dryer bent down to try and retrieve her phone, Officer Sheehan "pushed her against the house and wrestled her to the ground while he placed [her] in a chokehold," and yelled, "I told you to give your name." (*Id.* ¶ 11.) Officer Sheehan further placed his body weight "on top of [Billups-Dryer's] head and neck, causing her to not be able to speak or breathe." (*Id.* ¶ 12.) While Billups-Dryer was on the ground in pain, Officer Sheehan stomped on her right leg, causing a large bruise. (*Id.* at 13.) Officer Sheehan then dragged Billups-Dryer, who was screaming, crying, and battered, to a police car which transported her to the police station. (*Id.*) At the station, Billups-Dryer was processed on what she maintains were false charges, and then she was bonded out of jail. (*Id.*)

Upon her release, Billups-Dryer "went to the hospital due to chest pains, bleeding nose, swollen neck and face, bleeding on the tongue and bruises on her body." (*Id.* ¶ 14.) She was "triaged and admitted to the hospital for suffering a heart attack." (*Id.*) Billups-Dryer alleges that

2

the criminal charges against her from this encounter were "dismissed in a manner indicative of innocence," on January 21, 2020. (*Id.* ¶ 15.) Based on these allegations, Billups-Dryer claims that Officer Sheehan violated her constitutional rights by using excessive force and falsely arresting and detaining her without probable cause or justification. She also alleges that Officer Sheehan, and the Village as his employer, violated various state laws through his actions. Billups-Dryer seeks punitive damages against Officer Sheehan in his individual capacity for her state law claims.

Billups-Dryer further alleges that Officer Sheehan "had a history of using excessive force against individuals and violating individual's constitutional rights." (*Id.* ¶ 16.) Specifically, Officer Sheehan had been terminated from two prior police departments. (*Id.* ¶ 17.) During his interview with the Village police department, Officer Sheehan "admitted to being fired from the Markham Police Department in 2008 due to allegations of excessive force." (*Id.* ¶ 21.) Billups-Dryer alleges that the Dolton Police Department Chief of Police Robert Collins sent Officer Sheehan "a conditional offer of employment" and that "Chief Collins was aware of the circumstances surrounding Sheehan's prior termination and had an obligation to investigate the decision." (*Id.* ¶¶ 20, 22.) Based on these facts, Billups-Dryer brings a *Monell* claim against the Village, asserting that Chief Collins was a policymaker for the Village because he "had final decision-making authority over the hiring of the Dolton Police Department officers." (Dkt. 72 ¶ 58.) Billups-Dryer claims that the Village's "policies and practices around hiring and screening police officers allowed for the hiring of [] Sheehan, despite repeated sustained allegations of excessive force against him by civilians." (*Id.* ¶ 59.) She further alleges that the Village hired Officer Sheehan "with knowledge or deliberate indifference to the high risk" that he would violate citizens' rights, and thus the Village's hiring of Officer Sheehan "was the moving force behind

3

[Billups-Dryer's] injuries and the deprivation of her constitutional rights." (*Id*. ¶¶ 61, 63.)

## Discussion

**A. The Village's Motion to Dismiss**

The Village filed the instant partial motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion, the complaint must assert a facially plausible claim and provide fair notice to the defendant of the claim's basis. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Adams v. City of Indianapolis*, 742 F.3d 720, 728–29 (7th Cir. 2014). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. In considering a Rule 12(b)(6) motion, the Court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *Kubiak*, 810 F.3d at 480–81.

The Village argues that Billups-Dryer's *Monell* claim must be dismissed for two reasons: (1) it fails to plead that Chief Collins was a policymaker or that the Village acted with deliberate indifference; and (2) it is time-barred. (Dkt. 24.) For the reasons stated below, the Court finds that Billups-Dryer has sufficiently pled that Chief Collins was a policymaker and that the Village acted with deliberate indifference. As to the timeliness of her *Monell* claim, the Court declines to dismiss her claim as untimely because the Court finds that equitable tolling may apply.

4

**I. Whether Billups-Dryer Has Pled that Chief Collins is a Policymaker under *Monell***

A municipality may be liable pursuant to § 1983 for violating an individual's rights "when execution of [its] policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Monell*, 436 U.S. at 694. Under this standard, "[m]unicipalities are not vicariously liable for the constitutional torts of their employees or agents," but rather are only liable under *Monell*, "when they themselves cause the deprivation of rights." *Dean v. Wexford Health Sources, Inc.*, 18 F.4th 214, 235 (7th Cir. 2021); *J.K.J. v. Polk Cnty.*, 960 F.3d 367, 376 (7th Cir. 2022). "One way in which a municipality may be liable for a section 1983 violation is if 'an individual with final policymaking authority for the municipality (on the subject in question) caused the constitutional deprivation." *Kristofek v. Vill. of Orland Hills*, 712 F.3d 979, 987 (7th Cir. 2013) (quoting *Valentino v. Vill. of S. Chi. Heights*, 575 F.3d 664, 674 (7th Cir. 2009). Policymakers are "[o]fficials with *final* decisionmaking authority" and courts must "look to state law to determine the scope of such authority." *Valentino*, 575 F.3d at 676. The Seventh Circuit has identified three factors that may inform whether an individual is a policymaker for *Monell* purposes: "(1) whether the official is constrained by policies of other officials or legislative bodies; (2) whether the official's decision on the issue in question is subject to meaningful review; and (3) whether the policy decision purportedly made by the official is within the realm of the official's grant of authority." *Id*. (internal quotation marks and citation omitted).

Billups-Dryer has alleged that Chief Collins, as Chief of Police of the Dolton Police Department, "participated in and maintained final decision-making authority over the hiring of Defendant Sheehan." (Dkt. 72 ¶ 19.) The Village argues that by failing to plead that Chief Collins

5

had the authority to set policy for hiring and firing, as opposed to the authority to make hiring and firing decisions, Billups-Dryer fails to plead that Chief Collins was a policymaker. The Village is correct that Billups-Dryer cannot ultimately prevail on her *Monell* claim by merely showing that Chief Collins made hiring decisions. *See Pembaur v. City of Cincinnati*, 475 U.S. 469, 481–82 (1986) ("The fact that a particular official—even a policymaking official—has discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on an exercise of that discretion."); *Kristofek*, 712 F.3d at 987 ("[T]he mere unreviewed discretion to make hiring and firing decisions does not amount to policymaking authority. There must be a delegation of authority to set policy for hiring and firing, not a delegation of only the final authority to hire and fire.") (quoting *Valentino*, 575 F.3d at 675) (alteration in original).

At this stage of the case, however, the Court finds that Billups-Dryer's allegations are sufficient for the Court to reasonably infer that Chief Collins was a policymaker for the Village's hiring decisions. Billups-Dryer has alleged that Chief Collins "maintained final-decision-making authority," which suggests that his decision to hire Officer Sheehan was not subject to meaningful review. (Dkt. 72 ¶ 19.); *see Valentino*, 575 F.3d at 676. Further, there is no indication that Chief Collins' hiring decision was "constrained by policies of other officials or legislative bodies," which also supports the inference that Chief Collins was a final policymaker. *See Valentino*, 575 F.3d at 676. As to the source or scope of Chief Collins' authority under state or municipal law, neither party has articulated how that factor applies here, though Billups-Dryer notes that "in Illinois, '[] there is no question that a chief of police may be a final policymaker in appropriate circumstances.'" (Dkt. 77 at 11–12 (quoting *Logan v. City of Evanston*, No. 20 C 1323, 2020 WL 6020487, at *6 (N.D. Ill. Oct. 12, 2020).) At the pleading stage, the Court makes all reasonable

6

inferences in favor of the plaintiff and declines to dismiss the *Monell* claim on what may ultimately be a fact issue. *See FKFJ, Inc. v. Vill. of Worth*, No. 18 C 2828, 2019 WL 277723, at * 3 (N.D. Ill. Jan. 22, 2019) ("Neither side engages in the analysis of the Illinois Municipal Code or the Worth Village Code necessary to resolve the question of the extent of Werner's policymaking authority. . . . Resolving the question at this early stage might be premature . . . because it may turn on issues of fact.").

Additionally, the Seventh Circuit has recognized officials as *de facto* policymakers for purposes of *Monell* liability when an official makes hiring decisions as the official sees fit without any laws or policies to guide the official's decisionmaking. *See Valentino*, 575 F.3d 677–78 (finding that a mayor was a *de facto* policymaker and further stating, "Given that the Village has a population of only a few thousand people and is run by a small government, a legislative framework for personnel decisions may not actually exist.") More specifically, at the pleading stage, the Seventh Circuit has recognized a plausible claim that a police chief had "*de facto* authority to set policy for hiring and firing" when the complaint suggested that the chief "was fully in charge of the police department and that his firing decisions were not reviewed." *Kristofek*, 712 F.3d at 979. Here, the TAC alleges that Chief Collins made the final decision to hire Officer Sheehan and the Court thus finds it plausible that Chief Collins may have had *de facto* authority to set hiring and firing policy.

Finally, the Court notes that "under the proper circumstances a chief of police can be one with final policymaking authority" but "the factual question of whether the Chief of Police actually has final policymaking authority for the Village [] is not one properly addressed on a motion to dismiss." *Manos v. Caira*, 162 F. Supp. 2d 979, 993 (N.D. Ill. 2001). The Court finds that Billups-

7

Dryer has pled sufficient facts to plausibly state a claim that Chief Collins was the policymaker for hiring and firing decisions for the Village police. Whether the evidence ultimately supports that claim is a factual question to be resolved at a later stage.

### II. Whether Billups-Dryer Pled Deliberate Indifference

The Village also argues that Billups-Dyer fails to plead that the Village acted with deliberate indifference. Under *Monell,* a plaintiff must ultimately show that the municipal action which caused the deprivation of her rights was taken "with conscious disregard for the known or obvious risk of the deprivation." *Dean*, 18 F.4th 236. This requirement is often referred to as "deliberate indifference." *Id*. at 235. "Deliberate indifference is a stringent standard of fault requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Connick v. Thompson*, 563 U.S. 51, 62 (2011) (citation and quotation marks omitted). Here, Billups-Dryer alleges that the Village was aware of Officer Sheehan's history of using excessive force against individuals and termination from two prior police departments. She thus argues that the Village's decision to hire him anyway demonstrates its deliberate indifference to the obvious risk that Officer Sheehan would continue to use excessive force.

The Village argues that Billups-Dryer fails to plead deliberate indifference by failing to allege that the Village had notice that its hiring policy would lead to the constitutional violations at issue here. The Court disagrees. Billups-Dryer has several avenues for ultimately proving deliberate indifference. While many *Monell* cases require notice in the form of "a prior pattern of similar constitutional violations," there are "alternative path[s]." *J.K.J.*, 960 F.3d at 380. "[A] risk of constitutional violations can be so high and the need for training so obvious that the municipality's failure to act can reflect deliberate indifference and allow an inference of

8

institutional culpability, even in the absence of a similar prior constitutional violation." *Id*. At this stage, Billups-Dryer need not plead specific legal theories, but simply must allege sufficient facts that plausibly state a claim for *Monell* liability. Based on the allegations in the TAC, the Court finds it is plausible that the Village disregarded a known or obvious consequence of its decision to hire Officer Sheehan, given his documented and known history of sustained excessive force allegations. It is further plausible that the Village failed to take appropriate steps in light of the known or obvious potential consequence that Officer Sheehan would continue to violate individuals' rights through excessive force as he allegedly had in the past. The Court finds that Billups-Dryer has sufficiently pled her *Monell* claim against the Village.

### III. Whether Billups-Dryer's *Monell* Claim on a Hiring Theory Is Timely

The Village also argues that Billups-Dryer's *Monell* claim must be dismissed as time-barred because it relies on allegations relating to the hiring or screening of Officer Sheehan, which Billups-Dryer did not allege prior to the expiration of the statute of limitations. The parties agree that Billups-Dryer's *Monell* claim is subject to a two-year statute of limitations. *See Williams v. Lampe*, 399 F.3d 867, 870 (7th Cir. 2005). Her claims stem from her encounter with Officer Sheehan on March 10, 2018, and she timely filed this lawsuit on March 4, 2020, in a complaint that pled a *Monell* claim against the Village relating to its arrest policy, but not hiring policy.[2] (Dkts. 1 ¶¶ 45–48; 72 ¶¶ 7–14.) Billups-Dryer filed her TAC first alleging a *Monell* claim regarding the Village's hiring of Officer Sheehan on June 8, 2022. The issue is whether her amended *Monell* claim relates back to her original complaint.

---

[2] Prior to this lawsuit, Billups-Dryer filed a pro se complaint on March 11, 2019, involving the same incident, which did not mention the hiring of Officer Sheehan. *See Andrea Dryer v. Village of Dolton*, No. 1:19-cv-1702, Dkt. 1. The Court dismissed her pro se complaint without prejudice at Billups-Dryer's request. *Id*. at Dkt. 12.

9

The statute of limitations is an affirmative defensive, which a complaint need not "anticipate and overcome." *Cancer Found., Inc. v. Cerberus Cap. Mgmt., LP*, 559 F.3d 671, 674–75 (7th Cir. 2009). A plaintiff, however, may "plead [herself] out of court by alleging facts sufficient to establish the complaint's tardiness," such that dismissal is appropriate. *Id*. Under Fed. R. Civ. P. 15(c), an amendment to a pleading that includes a claim asserted outside the statute of limitations relates back to the original complaint when "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." New claims in an amended pleading will relate back to the original complaint "if the amendment alleges events 'close in time and subject matter' to those previously alleged, and if they 'led to the same injury.'" *In re Safeco Ins. Co. of Am.*, 585 F.3d 326, 331 (7th Cir. 2009) (citation omitted). The key question in determining whether new claims relate back is "whether 'the original pleading furnishes the defendant with notice of the events that underlie the new contention.'" *Id.* (citation omitted).

The Court finds that Billups-Dryer's *Monell* hiring claim, as pled in her TAC, does not relate back to the date of her initial complaint. The original complaint contains no references to the Village's hiring of Officer Sheehan or his employment history. Instead, Billups-Dryer's initial *Monell* claim alleged that the Dolton Police Department had "a policy or procedure under which employees routinely make false arrest[s] in order to meet an arrest quota," and a policy "that does not punish Officers for aggressive and abusive arrest procedures against those being taken into their custody." (Dkt. 1 ¶ 46.) These allegations relating to arrest policy did not put the Village on notice that it would be defending the decision to hire Officer Sheehan. Billups-Dryer correctly notes that her current *Monell* claim "relies on the same act of violence by Defendant Sheehan, and

10

the same resulting injuries." (Dkt. 77 at 4.) However, the municipal policy or custom she now relies on as the basis of her *Monell* claim is the Village's decision to hire Officer Sheehan, which is not part of the same conduct, transaction, or occurrence alleged in her initial complaint. As discussed above, her current *Monell* claim will depend on what the Village knew or should have known when it hired Officer Sheehan, as well as whether Chief Collins was a policymaker. In other words, Billups-Dryer's *Monell* claim rests on a different factual basis than the facts alleged in her initial complaint relating to her arrest on March 10, 2018, or the Village's policies regarding arrest quotas or punishing officers for abusive arrest procedures. *See Williams v. Anderson*, No. 09 C 1915, 2010 WL 5014393, at *4 (N.D. Ill. Dec. 2, 2010). Given that the *Monell* claim in the TAC is not based on the same conduct, transaction, or occurrence pled in the initial complaint, the claim does not relate back.

Yet, the Court will not dismiss Billups-Dryer's *Monell* claim as untimely, because the Court finds that her claim may have been equitably tolled. The doctrine of equitable tolling allows "a plaintiff to sue after the statute of limitations has expired if through no fault or lack of diligence on [her] part [s]he was unable to sue before, even though the defendant took no active steps to prevent [her] from suing." *Donald v. Cook Cnty. Sheriff Dep't.*, 95 F.3d 548, 561–62 (7th Cir. 1996) (citation omitted) (noting that a plaintiff must demonstrate "reasonable diligence."). Billups-Dryer argues that she was "unable to ascertain the precise facts supporting her claims related to the Village's deliberate indifference regarding Sheehan's hiring until after Sheehan's deposition on November 1, 2021." (Dkt. 77 at 6.)

At this stage in the litigation on the record before it, the Court does not have sufficient facts to determine whether Billups-Dryer exercised reasonable diligence to learn of the circumstances

11

surrounding Officer Sheehan's hiring or his employment history. As the Seventh Circuit has stated in reference to equitable tolling on a motion to dismiss: "it is too soon to tackle this issue. All we have to go on is the complaint, and because the period of limitations is an affirmative defense it is rarely a good reason to dismiss under Rule 12(b)(6)." *Reiser v. Residential Funding Corp.*, 390 F.3d 1027, 1030 (7th Cir. 2004*)*. The Seventh Circuit has further noted:

> As long as there is a conceivable set of facts, consistent with the complaint, that would defeat a statute-of-limitations defense, questions of timeliness are left for summary judgment (or ultimately trial) at which point the district court may determine compliance with the statute of limitations based on a more complete factual record.

*Sidney Hillman Health Ctr. of Rochester v. Abbott Labys., Inc.*, 782 F.3d 922, 928 (7th Cir. 2015).

Here, it is conceivable that Billups-Dryer exercised reasonable diligence in trying to learn of Officer Sheehan's employment history, and the circumstances under which the Village hired him. Billups-Dryer argues that she was only able to learn of the circumstances surrounding Officer Sheehan's hiring after his deposition on November 1, 2021, despite her timely filing of this lawsuit, serving written discovery, and sending out subpoenas to investigate Officer Sheehan's background. (Dkt. 77 at 6.) The Court has found evidence supporting this argument in the record, specifically in a letter the Village provided dated January 25, 2019, from Billups-Dryer's former counsel attempting to enforce subpoenas issued to the Village, which the Village had not responded to, requesting evidence from the date of the arrest and a record of civilian complaints against Officer Sheehan. (*See* Dkt. 102-1 at 31.) The Court, therefore, will not dismiss her *Monell* claim as untimely at this stage. The Village's motion to dismiss on timeliness grounds is denied. The issue of equitable tolling should be resolved during summary judgment or trial.

**B. Officer Sheehan's Motion to Strike Billups-Dryer's Request for Punitive Damages**

Turning to Officer Sheehan's motion to strike, under Fed. R. Civ. P. 12(f), "[t]he court may strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter." Officer Sheehan has moved to strike Billups-Dryer's request for punitive damages in her state law claims against him in his individual capacity for malicious prosecution, false imprisonment, assault, and battery. (Dkt. 74.) Officer Sheehan argues that Section 2-102 of the Illinois Tort Immunity Act, 745 ILCS 10/2-102, grants him immunity from requests for punitive damages. He further relies on the Court's May 26, 2022, Memorandum Opinion and Order, which granted a prior motion to strike Billups-Dryer's request for punitive damages against the Village and Officer Sheehan in Billups-Dryer's Second Amended Complaint. (Dkt. 70 at 12.) For the following reasons, the Court denies Officer Sheehan's motion to strike.

> Section 2-102 of the Illinois Tort Immunity Act states:
>
> Notwithstanding any other provision of law, a local public entity is not liable to pay punitive or exemplary damages in any action brought directly or indirectly against it by the injured party or a third party. In addition, no public official is liable to pay punitive or exemplary damages in any action arising out of an act or omission made by the public official while serving in an official executive, legislative, quasi-legislative or quasi-judicial capacity, brought directly or indirectly against him by the injured party or a third party.

745 ILCS 10/2-102. Based on the parties' briefing and the Court's research, neither the Seventh Circuit nor the Illinois Supreme Court has addressed the question of whether police officers are public officials entitled to immunity under Section 2-102. *See Ohlrich v. Vill. of Wonder Lake*, 22 F. Supp. 3d 874, 879 (N.D. Ill. 2014). Absent any binding authority on this matter, district courts in Illinois are split on the question of whether a police officer sued for battery or other state law torts in the officer's individual capacity is a public official serving in an official executive capacity

13

under Section 2-102. *See Gay v. City of E. Moline*, No. 4:12-cv-4066-SLD-JAG, 2013 WL 5366101, at *4 (C.D. Ill. Sept. 25, 2013) (finding that police officers are not public officials under Section 2-102 and interpreting "public official" to cover "figureheads of local public entities" sued in their official capacities as opposed to public employees like patrolmen, who do not have "significant supervisory or policy making authority"); *Reese v. May*, 955 F. Supp. 869, 875 (N.D. Ill. 1996) (interpreting "public official" as "a public employee who exercises discretion in the performance of uniquely governmental functions," and finding that police officers are public officials under Section 2-102).

Prior to this matter's reassignment to the undersigned, this Court granted the Village and Officer Sheehan's prior motion to strike punitive damages against both defendants for state law claims in Billups-Dryer's Second Amended Complaint. There, the Court stated, "Dolton and Sheen [sic] cannot be held liable for punitive damages under the plain meaning of Section 2-102 as a local public entity and (former) public official being sued in his official capacity." (Dkt. 70 at 12.) When considering the prior motion to strike, the Court did not directly address the question of whether police officers sued in *their individual capacities* are immune under Section 2-102. Instead, the Court relied only on case law that discussed the liability of public entities under Section 2-102 generally. (*Id*. (citing *McGruder v. City of Galesburg*, No. 4:20-cv-04102-SLD-JEH, 2021 WL 415044, at *2 (C.D. Ill. Feb. 5, 2021) (granting the City of Galesburg's motion to strike prayer for punitive damages given Section 2-102 immunity to local public entities); *Michalek v. Vill. of Sugar Grove*, No. 20-cv-3434, 2020 WL 11626072, *1–2 (N.D. Ill. Dec. 14, 2020) (addressing the Village of Sugar Grove's motion to strike punitive damages under Section 2-102 in the context of Fair Labor Standards Act claims); *Shachter v. City of Chi*cago, No. 18-cv-

14

5504, 2020 WL 3058086, at *6 (N.D. Ill. June 9, 2020) (suggesting that Section 2-102 applies where defendants are a municipality and city attorneys).) The Court thus has not resolved the question of whether Officer Sheehan, as a police officer sued in his individual capacity, is immune from punitive damages under Section 2-102.

The Court declines to rule on this question now given the stage of this litigation. As a general matter, this Court strongly disfavors motions to strike. *See* Judge Nancy L. Maldonado's Case Procedures, "Motions to Strike Strongly Disfavored"[3] ("Motions to strike almost always would require the Court to decide significant issues . . . on the merits.") (citing *Custom Vehicles, Inc. v. Forest River, Inc.*, 464 F.3d 725, 727 (7th Cir. 2006)). The question of whether Officer Sheehan was a public official under Section 2-102 serving in an official executive capacity when he arrested Billups-Dryer and allegedly committed various state law violations is a significant issue that the Court declines to resolve on a Rule 12(f) motion to strike. The Court will be better positioned to answer this question at a later stage in litigation when it can review the evidence presented by both parties. *See Ohlrich*, 22 F. Supp. 3d at 879. Officer Sheehan's motion to strike is therefore denied.

---

[3] The Court's Case Procedures are available at: https://www.ilnd.uscourts.gov/judge-info.aspx?IuUaWzNcEoN8HI4E0WxFpqZi3W6Fhvaj

**Conclusion**

For the foregoing reasons, the Village's motion to dismiss Billups-Dryer's *Monell* claim is denied and Officer Sheehan's motion to strike is denied.

ENTERED: 9/27/23

*Nancy L. Maldonado*
_____
Nancy L. Maldonado
United States District Court Judge